**BONDHOLDERS SECURITIES CORPORATION, a corporation, v. BERTRAM IBBETSON.**

16 So. (2nd) 431          June Term, 1943
December 21, 1943          En Banc
Rehearing Denied February 23, 1944

*Smith & Axtell,* for appellant.
*Frank R. Greene,* for appellee.

TERRELL, J.:

In July, 1925, Bertram Ibbetson and B. Ibbetson executed their promissory note in favor of Edward E. Dammers Realty Corporation in the sum of $3000 in payment for lots 32 and 33, Block 81 Central Miami, Part 5. Bondholders Securities Corporation claiming to be the holder in due course brought this action to recover the face of the note with interest. The declaration was in one count to which there was a multitude of pleas, some of which went out on demurrer. An equal multitude of replications was then filed and most of them were chloroformed by a demurrer.

In short, the defense to the declaration was that the plaintiff was not a holder in due course, that the vendor, Edward E. Dammers Realty Corporation was guilty of fraud, that there was a novation of the contract, and that no deed was tendered before suit was filed. On final hearing, the Court found for the defendant on the point of whether or not the plaintiff was a holder in due course and as to tender of a deed before suit was brought and entered judgment accordingly. This appeal was prosecuted.

On both these points the trial court wrote a very lucid opinion in which he reviewed the law and the evidence affecting the transaction. He took account of the fact that the note was the offspring of the late lamented Florida real estate boom and made its appearance in court burdened with the luggage common to many others that emanated from that fantastic period.

Viewed in perspective, that period appears now to have been a lapse in a lucid interval symbolized by a flood of bogus transactions comparable to those cast up by the South Sea bubble, but it was in reality one of the most democratic phenomena that ever came south... It "took in" the Gentile and the Hebrew, the Yankee and the Cracker, the Pagan and the Christian, the Catholic and the Protestant and all the other wise guys, and "stripped" them to the skin. They came from the four points of the compass by train, bus, motor car, and plane. They made the rush of the forty-niners to California look like small change and the race to the Klondike in the 90's look like a phantom. In some com-

munities, paper millionaires were as frequent as "shave-tails" around an army post, but they too burst with the bubble and when they recovered from their cataleptic trance wended their way home with nothing more than a memory of having had a part in the boom. To that lingering remnant of the clansmen of the 60's and 70's, it brought back memories of the return of the carpet baggers. Beat that for leveling. The original owner had his down payment and his land back.

The statute of frauds and perjuries was abolished and all formalities to safeguard a contract for sale or a mortgage to secure deferred payments on lands was cast to the discard. Real estate offices were set up by bell hops and taxi drivers and city lots were hawked so often that the pyramidded mortgages looked like the Empire State Building. Lawyers, teachers, preachers, spinsters, morons, and the rest fell for the lure and got "stung" in the same fashion.

A few bankers with level heads glued to the philosophy of eight per cent, stood by and refused to join the scramble for jackpots predicated in nothing more tangible than the hysteria of the moment. They too had substance when the melee subsided. Yes, they had more than that, they had proven that they could keep their heads cool and their feet on the ground when all about them were going "cuckoo." Thrice blessed was the community that had one.

Beach sands competed with gold dust and marsh flats once charged to have been sold by the quart were peddled over the country at values the Jenni in the fabled Lamp of Aladdin would not have conceived. It was perhaps a case of mass psychosis and I have sometimes wondered why such a plea should not have been entered to suits on some of those notes. If you have any illusions as to public skepticism about boom time paper, take it to your banker and offer it for collateral.

We have examined the evidence and it is ample to convince the trial judge that the note in question was infected with the loose practices of the period. It also shows that the contract provided for a designated deed and that while a belated attempt was made to give one, it did not comply with the contract agreement.

Affirmed.

BROWN and CHAPMAN, JJ., concur.

BUFORD and SEBRING, JJ., concur in conclusion only.

THOMAS and ADAMS, JJ., dissent.

BROWN, J., concurring:

The deed tendered was not a warranty deed, as called for by the contract, nor does it clearly appear that A. N. Spence, Trustee, had authority to make it.

PER CURIAM:

An opinion and judgment was filed in this cause December 21, 1943. Mr. Justice TERRELL prepared the opinion, in which Mr. Justice CHAPMAN and Mr. Justice BROWN concurred. Chief Justice BUFORD and Mr. Justice SEBRING concurred in the conclusion or judgment only. Mr. Justice THOMAS and Mr. Justice ADAMS dissented.

Therefore, the opinion prepared by Mr. Justice TERRELL expressed the views of himself and two other Justices but not the opinion of a majority of the Court.

On consideration of the Petition for Rehearing, Mr. Justice BUFORD, Mr. Justice TERRELL, Mr. Justice BROWN, and Mr. Justice SEBRING are of the opinion that our judgment of affirmance entered herein on December 21, 1943, should be adhered to, while Mr. Justice THOMAS and Mr. Justice ADAMS are of the opinion that the judgment should be reversed.

Therefore, rehearing is denied.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.